*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 21, 2020

Plaintiff-Appellee,

v

No. 346523
Wayne Circuit Court
LC No. 18-001419-01-FC

JASON WILLIAM OAKES,

Defendant-Appellant.

Before: BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of kidnapping, MCL 750.349, two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b, three counts of felonious assault, MCL 750.82, assault with intent to do great bodily harm, MCL 750.84, unlawful imprisonment, MCL 750.349b, and torture, MCL 750.85.[1] Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 28 to 50 years in prison for his convictions for kidnapping, first-degree CSC, and torture, 4 to 22½ years for unlawful imprisonment, 2 to 15 years for assault with intent to do great bodily harm, and 1 to 6 years for felonious assault. Defendant appeals as of right. Finding no error, we affirm.

## I. FACTS

This case arises from defendant's kidnapping and assault of the victim over the course of six days. On January 21, 2018, defendant and his former girlfriend, BB, were at defendant's house when she confessed that she had cheated on him. Over the next six days, defendant beat BB with a mallet, an electric cord, a vacuum, steel toed boots, and his fists. He also choked her repeatedly, sexually assaulted her, and told her that he was going to kill her.

---

[1] Defendant was acquitted of one count of felonious assault, MCL 750.82, and assault with intent to murder, MCL 750.83.

On January 27, 2018, after receiving repeated requests from BB's family and friends to search for her, police officers checked at defendant's house where they discovered BB injured and lying on a bed. BB was taken to a hospital where an examination determined that she had suffered 76 injuries, including a broken nose. BB later testified that on the day she was found by police, defendant told her that he was going to force her to drink bleach, then wrap her in a tarp and bury her in a hole that he had dug. Defendant now appeals his convictions.

## II. ANALYSIS

### A. PHOTOGRAPHIC EVIDENCE

Defendant first contends that the trial court abused its discretion by admitting 158 photographs depicting BB's physical injuries, arguing that the probative value of the photographs was substantially outweighed by unfair prejudice. We disagree.

Photographic evidence generally is admissible if it is both relevant under MRE 401, and is not unduly prejudicial under MRE 403. *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Only when the probative value of the evidence is outweighed by the danger of unfair prejudice does photographic evidence warrant exclusion. *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018).

"Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). However, as our Supreme Court has observed, "[a]ll relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations." *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018). Thus, although photographs should not be admitted for the sole purpose of arousing the sympathies or prejudices of the jury, a photograph that is otherwise admissible for a proper purpose it is not rendered inadmissible "merely because it brings vividly to the jurors the details of a gruesome or shocking accident or crime." *Brown*, 326 Mich App at 193 (quotation marks and citation omitted). Photographs may be admitted to corroborate the testimony of a witness. *Id*. at 192.

Whether to admit or exclude photographs is a decision within the discretion of the trial court. *Gayheart*, 285 Mich App at 227. We will not disturb a trial court's decision to admit or exclude evidence absent an abuse of discretion, *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017), which occurs when the trial court's decision falls outside the range of principled outcomes. *People v McBurrows*, 322 Mich App 404, 411; 913 NW2d 342 (2017). When reviewing a trial court's decision to admit evidence for an abuse of discretion, we view the evidence in the light most favorable to the proponent of the evidence, giving the evidence "its maximum reasonable probative force and its minimum reasonable prejudicial value." *People v Head*, 323 Mich App 526, 540; 917 NW2d 752 (2018) (quotation marks and citation omitted).

In this case, defendant objected to the admission of 158 photographs that depict the numerous injuries identified at the hospital during the physical examination of the victim after she

was rescued. The photographs depict BB's two black eyes, broken nose, and numerous bruises and abrasions covering much of her body. Defendant argues that the photographs lacked probative value because they are duplicative of the testimony of the witnesses and were overly prejudicial.

Defendant was charged with, among other charges, felonious assault, MCL 750.82, assault with intent to do great bodily harm, MCL 750.84, torture, MCL 750.85, and assault with intent to murder, MCL 750.83. The charge of felonious assault requires the prosecution to establish beyond a reasonable doubt that the defendant acted "with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich 1, 8; 742 NW2d 610 (2007). The charge of assault with intent to do great bodily harm requires the prosecution to establish beyond a reasonable doubt that the defendant acted with the intent to do great bodily harm, defined as an intent to do "serious injury of an aggravated nature." *People v Brown*, 267 Mich 141, 147; 703 NW2d 230 (2005). To demonstrate torture, the prosecution was required to prove that the defendant intentionally caused great bodily injury and/or severe mental pain or suffering to the victim. MCL 750.85(1). To demonstrate assault with intent to murder, the prosecution was required to prove that defendant committed assault with the actual intent to kill. *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011).

This Court has observed that injuries suffered by a victim may be indicative of a defendant's intent. See *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). Here, the photographs were relevant to prove the elements of the crimes charged, namely the extent of the victim's injuries, which is indicative of the defendant's intent in causing those injuries. Although photographs should not be admitted merely to shock or inflame the jury,[2] there is also no basis to hide the realities of a crime from the jury by excluding photographs that accurately depict the results of the crime. See *Brown*, 326 Mich App at 193. Here, BB's testimony described defendant's acts and the photographs depict the results of his acts. The intent behind those acts and the corroboration of BB's testimony were proper purposes for admitting the evidence. See *Id.* at 192.

Defendant also argues that the admission of the photographs was unnecessary in light of other evidence offered at trial, and that medical personnel examining BB could have testified concerning each of the injuries without the photographs. However, photographs are not excludable merely because a witness could testify regarding the information contained in the photographs; rather, "[t]he jury is not required to depend solely on the testimony of experts, but is entitled to view the severity and vastness of the injuries for itself." *Gayheart*, 285 Mich App at 227. Here, the photographs corroborated the medical testimony regarding her injuries and BB's testimony that she was beaten with multiple objects over the course of six days. Thus, the photographs were highly probative, and their probative value was not outweighed by the danger of unfair prejudice.

---

[2] Although the victim suffered numerous injuries, after reviewing the photographs we conclude that they are not so gruesome as to evoke an unfair emotional response. We also observe that the jury did not convict defendant of the charge of assault with intent to murder, suggesting that the jury did not make its decision on the basis of an unfair emotional response. See *Head*, 323 Mich App at 542.

We therefore conclude that the trial court did not abuse its discretion by admitting the photographs depicting the victim's injuries.

## B. OTHER ACTS OF DOMESTIC VIOLENCE

Defendant next contends that the trial court abused its discretion when it allowed evidence of defendant's prior acts of domestic violence to be admitted, arguing that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. We disagree.

MRE 404(b) generally precludes the introduction of evidence of a defendant's other crimes, wrongs, or acts for the purpose of showing the defendant's propensity to commit a crime. However, in the context of domestic violence, MCL 768.27b permits the introduction of prior acts of domestic violence for the purpose of showing the defendant's character or the defendant's propensity to commit domestic violence. *People v Schultz*, 278 Mich App 776, 778; 754 NW2d 925 (2008). MCL 768.27b(1) provides:

> Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

MCL 768.27b thus "expands the admissibility of domestic-violence other-acts evidence beyond the scope permitted by MRE 404(b)(1), *People v Mack*, 493 Mich 1, 2; 825 NW2d 541 (2012), permitting evidence of prior domestic violence for the purpose of demonstrating the defendant's character or propensity to commit the same act. *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). Evidence of a defendant's prior acts of domestic violence is admissible under MCL 768.27b because "a full and complete picture of a defendant's history tends to shed light on the likelihood" that the defendant committed a domestic violence crime. *People v Propp*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343255); slip op at 8.

But although MCL 768.27b expands the admissibility of evidence of other acts of domestic violence beyond the scope permitted by MRE 404(b)(1), other acts of domestic violence may still warrant exclusion under MRE 403. MCL 768.27b(1). In determining whether MRE 403 precludes the admission of otherwise admissible evidence, we must determine whether the other acts evidence was unfairly prejudicial, weighing the propensity inference in favor of the probative value of the evidence rather than its prejudicial effect. See *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012) (discussing the similar statute, MCL 768.27a).

Domestic violence includes "[c]ausing or attempting to cause physical or mental harm to a family or household member." MCL 768.27b(6)(a)(*i*). A family or household member includes "[a]n individual with whom the person has or has had a dating relationship." MCL 768.27b(6)(b)(*iv*). In this case, the charges against defendant involved his physical and mental abuse of BB, with whom he had a dating relationship, and thus involved domestic violence. MCL 768.27b(6)(a). The testimony that defendant sought to exclude was that defendant perpetrated other acts of domestic violence against her within the year preceding the assaults that led to his arrest in this case. At trial, several witnesses testified regarding prior domestic violence incidents

committed by defendant against BB. One witness testified having observed injuries on BB after she spent time with defendant, including marks on her arm, hand, and legs, which caused the witness to take BB to the hospital. Another witness testified that she saw defendant slap BB and saw BB with a black eye and marks around her throat. Another witness testified that BB sought her help on one occasion, claiming that defendant was beating her. BB testified that on one occasion defendant gave her a black eye, and on another occasion choked her until she feared she would pass out.

Defendant's prior acts of domestic abuse were relevant to show his character and his propensity to commit acts of violence against BB, and allowed the jury to assess the charges against defendant in the light of defendant's behavioral history. See *People v Rosa*, 322 Mich App 726, 732; 913 NW2d 392 (2018). The evidence was also probative of the victim's credibility.

We also conclude that the evidence was not unfairly prejudicial. Considerations that may lead to the exclusion of other acts evidence under the similar statute, MCL 768.27a, include the dissimilarity between the charged conduct and the other acts, temporal proximity of the acts, the infrequency of the other acts, intervening acts, lack of reliability of the other acts evidence, and lack of need for the other acts evidence. *Watkins*, 491 Mich 487-488. In this case, the other acts of domestic violence described were similar to the charged conduct, occurred within one year of the charged conduct, and were observed by several witnesses. Further, in this case, the trial court minimized any prejudicial effect of the evidence by instructing the jury not to render its verdict solely on the basis of the other acts evidence. See *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). The trial court's instructions to the jury are presumed to cure most errors, and we presume that jurors follow their instructions. *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017). The trial court therefore did not abuse its discretion by admitting evidence of defendant's other acts of domestic violence.

## C. CROSS-EXAMINATION OF WITNESS

In his Standard 4 Brief,[3] defendant argues that the trial court violated his constitutional right to confrontation by limiting his opportunity to cross-examine BB about her mental health. We disagree.

Although defendant at trial raised the issue of presenting evidence of BB's mental illness, defendant did not present this evidentiary issue as a constitutional claim in the trial court. He therefore failed to preserve his claim that his constitutional rights were violated. *People v. King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). We review an unpreserved constitutional claim for plain error affecting the defendant's substantial rights. *Id*.

A defendant has the right to be confronted with the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. Although the right to confrontation includes the right of cross-examination of witnesses, that right is not unlimited. *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). The scope of cross-examination is within the discretion of the trial court,

---

[3] A supplemental appellate brief filed in propria persona by a criminal defendant under Supreme Court Administrative Order No. 2004-6, Standard 4.

and the trial court may limit cross-examination on irrelevant issues or collateral matters. *People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1992).

In this case, the trial court did not plainly err by not permitting defendant to cross-examine BB about her mental health. Although the credibility of a witness is always relevant, *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995), nothing in the record suggests that BB's mental health called her credibility into question. In this case, the trial court determined that BB's mental health records indicating schizophrenia and bipolar disorder were not relevant to the defense and would not provide reasonable doubt of defendant's guilt, and therefore denied the admission of the records at trial, limiting defendant at trial to inquiring about whether BB did or did not take medication during the incident. In the absence of any evidence or indication that BB's mental health diagnoses had "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence," MRE 401, the trial court did not plainly err when it did not permit defendant to cross-examine the victim regarding her mental health diagnoses.

## D. SENTENCING

Defendant also contends that his sentences for kidnapping, torture, and two counts of first-degree CSC are unreasonable, and that the sentences constitute cruel and/or unusual punishment. We disagree.

Under MCL 769.34(10), this Court is required to affirm a minimum sentence that falls within the recommended minimum guidelines range "unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). A sentence is reasonable if it is proportionate to the seriousness of the circumstances surrounding both the offense and the offender; a sentence within the range calculated under the sentencing guidelines is presumptively proportionate. *People v Odom*, 327 Mich App 297, 315; 933 NW2d 719 (2019). Thus, this Court reviews for reasonableness only minimum sentences that depart from the minimum sentencing range recommended by the sentencing guidelines. *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018).

In this case, defendant does not dispute that his sentencing guidelines range was 171 to 356 months' imprisonment. Defendant was sentenced to minimum terms of imprisonment of 28 years (336 months) for kidnapping, torture, and two counts of first-degree CSC, and thus his sentences are within the minimum sentencing guidelines range. Because defendant in this case does not contend that a scoring error occurred or that the trial court relied on inaccurate information, the sentences must be affirmed. MCL 769.34(10); *Schrauben*, 314 Mich App at 196.

Defendant also contends, however, that the sentences constitute cruel and/or unusual punishment. The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment, *Morden v Grand Traverse Co*, 275 Mich App 325, 332; 738 NW2d 278 (2007), while the Michigan Constitution prohibits cruel or unusual punishment. See US Const Am VIII; Const 1963, art 1, § 16. A sentence falling within the recommended guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual punishment. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). A defendant may only overcome this presumption by presenting evidence of unusual circumstances that render the presumptively

proportionate sentence disproportionate. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013).

In this case, no such unusual circumstances exist. Defendant argues that at the time of sentencing he was 35 years old and will be 63 years old at the time he serves his minimum sentence. A defendant's age alone, however, is insufficient to demonstrate that an otherwise proportionate sentence is cruel or unusual. See *People v Piotrowski*, 211 Mich App 527, 532-533; 536 NW2d 293 (1995) (presumption not overcome by age, lack of criminal history).

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Michael F. Gadola