# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DEREK MAURICE LEIGH,

       Defendant-Appellant.

UNPUBLISHED
May 15, 2018

No. 335883
St. Clair Circuit Court
LC No. 16-001697-FH

Before: CAMERON, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of domestic violence, third offense, MCL 750.81(2), and assault by strangulation, MCL 750.84(1)(b), and he was subsequently sentenced as a fourth habitual offender to a lengthy prison term. Defendant raises several challenges to the admission and preclusion of certain evidence, the court's order requiring his restraint during trial, and the performance of his trial counsel. We discern no error warranting a new trial and affirm.

## I. BACKGROUND

On the evening of June 27, 2016, defendant strangled his live-in girlfriend following an argument. The two had argued several times that day. Defendant drank to excess, rendering him even more combative. The victim repeatedly attempted to placate him, fearing his temper. However, when defendant accused the victim of being a bad mother to her 14-year-old son, KD, the victim reminded him of his failure to raise his own 10 children. The victim described that defendant exploded. Defendant rushed the victim and grabbed her around the neck, pushing her across the room and into her closet door. Before defendant grabbed the victim, she called for KD. KD entered the room in time to see defendant strangling his mother against the closet and he heard her cough. Defendant then released his grip.

The victim fled the home with KD and his friend, AD. Defendant also left and went to a neighbor's house. Upon noticing defendant's exit, the victim, KD, and AD returned and locked themselves in the house. The victim contacted the police when the indignant defendant arrived with the neighbor and demanded to remove his property from the home.

At trial, the prosecution presented evidence that defendant had strangled a former girlfriend in much the same manner as here. In January 2015, defendant and his live-in girlfriend, Melissa Wencley, argued about whether Wencley should take their one-year-old

-1-

daughter out to dinner with her on a cold winter evening. Wencley indicated that she would be taking the baby because she would not leave the child "with a crack head." Defendant responded by grabbing Wencley by the neck, pushing her from the nursery and into the master bedroom, and holding her down on the bed while strangling her.

## II. EVIDENCE OF THE VICTIM'S POTENTIAL BAD ACTS

Before trial, the prosecution filed a motion in limine to preclude evidence that four days after defendant's arrest, the victim picked up his Xanax prescription. Defendant contended that he and the victim actually fought over the prescription on June 27, and not their respective parenting skills. Defendant asserted that the victim was a drug addict and wanted access to defendant's Xanax, but defendant had not picked up his prescription refill that day. Defendant speculated that the victim lied about the assault to secure defendant's arrest so she could take his prescription medication for her own. The trial court precluded this evidence, determining that the victim's conduct *after* defendant's arrest was not relevant to her state of mind at the time of the charged offense.

Defendant now contends that he was denied the right to present a relevant defense and to confront or impeach the victim. Even assuming that the proffered evidence was relevant, we discern no error requiring a new trial. First, the trial court did not abuse its discretion in finding that the evidence was more unfairly prejudicial than probative. MRE 403 provides for the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." All relevant evidence is prejudicial to some extent, but it is unfairly prejudicial "where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence" or if it "goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, like the jury's bias, sympathy, anger, or shock." *People v Urban*, 321 Mich App 198, 211; 908 NW2d 564 (2017) (quotation marks and citation omitted).

Evidence that the victim picked up defendant's Xanax prescription four days after his arrest would serve only to confuse the issues and mislead the jury. Defendant was allowed to question the victim about the subject of their fight and anything else that occurred on or leading up to that date, including the victim's history of substance abuse. But evidence of the victim's activities four days after the assault was of limited value in explaining the events of the evening in question. The evidence was overly prejudicial as it painted the victim in a criminal light when no charges were ever pressed against her and defendant had actually previously given her permission to pick up his prescriptions.

Moreover, any error in excluding the subject evidence was harmless in light of the other record evidence. To merit relief based on evidentiary error, the defendant must establish a "reasonable probability that the evidence complained of might have contributed to the conviction." *People v Anderson (After Remand)*, 446 Mich 392, 406; 521 NW2d 538 (1994) (quotation marks and citation omitted). The victim's alleged drug-seeking behavior was not a legal excuse for defendant's assault by strangulation. KD testified that he observed defendant with his hand around his mother's neck. KD described that the victim was coughing. He also

corroborated the victim's testimony regarding the subject of her fight with defendant; KD heard defendant criticize the victim's parenting skills and the victim's retort that defendant abandoned his own children. Wencley's testimony about defendant's similar attack on her in 2015 further supported the prosecution's claims. Given this record, we cannot conclude that the proffered evidence would have tipped the scales in defendant's favor.

## III. LEG BRACE

During his trial, the court required defendant to wear a leg brace that impeded his movement as a substitute for shackles. Defendant now contends that he was denied due process of law by being forced to wear this mobility-limiting device in front of the jury. Defendant further contends that his trial counsel was ineffective in failing to object to this procedure.

We generally review for an abuse of discretion a trial court's order that a defendant wear shackles during a trial. *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). As defendant failed to preserve this issue, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

As a general rule, "having a defendant appear before a jury handcuffed or shackled negatively affects the defendant's constitutional guaranteed presumption of innocence[.]" *People v Banks*, 249 Mich App 247, 256; 642 NW2d 351 (2002). To interfere with the presumption of innocence, however, the jury must actually observe that the defendant was shackled. *Payne*, 285 Mich App at 186. Even where the "jurors inadvertently see a defendant in shackles, there still must be some showing that the defendant was prejudiced" to merit relief. *People v Horn*, 279 Mich App 31, 37; 755 NW2d 212 (2008).

Regardless of whether the trial court abused its discretion in requiring defendant to wear a mobility-limiting leg brace, defendant cannot establish any prejudice warranting relief. Defendant has never claimed that the jury saw the leg brace. Indeed, courts around the country have noted that such devices are typically worn underneath the clothing. See *Hoang v People*, 323 P3d 780, 785 (Co S Ct, 2014); *State v Dixon*, 226 Ariz 545, 552; 250 P3d 1174 (2011); *Zink v State*, 278 SW3d 170, 186 (Mo S Ct, 2009); *State v Ninci*, 262 Kan 21, 53-54; 936 P2d 1364 (1997). Instead, defendant asserts that the leg brace interfered with his mobility such that the jury would speculate that he "was a danger to everyone in the court room." Nothing supports this logical leap. Absent any evidence of prejudice, defendant is not entitled to a new trial, whether based on the trial court's error or his attorney's failure to object.

## IV. OTHER ACTS EVIDENCE

Finally, defendant contends that the trial court erred in admitting evidence regarding his prior assault of Wencley and that his attorney was ineffective in failing to object to the admission of this evidence. As noted, Wencley testified at defendant's trial regarding his 2015 strangulation assault against her. The victim testified regarding her conversations with Wencley about the assault and about Wencley's history with defendant. And Port Huron Police Officer

Thomas Rumley testified that he responded to the scene, heard Wencley's account of the assault, and observed "redness" on her neck.[1]

Defense counsel did not object to the admission of this evidence at trial. Although defendant filed a motion to remand to more fully develop his complaint regarding counsel's performance, this motion addressed only counsel's failure to object to his restraint, not the admission of other acts evidence. As such, our review of defendant's evidentiary challenge is for plain error, *Carines*, 750 Mich at 764, and our review of defendant's challenge to counsel's performance is limited to mistakes apparent on the existing record. *Payne*, 285 Mich App at 188.

MCL 768.27b(1) permits the presentation of other acts of domestic violence in a domestic violence trial as follows:

> Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under [MRE] 403.

MCL 768.27b(4), in turn, precludes evidence of acts that occurred more than 10 years before the current charged incident. The statute "expands the admissibility of domestic-violence other-acts evidence beyond the scope permitted by MRE 404(b)(1)," which generally precludes other acts evidence " 'to prove the character of a person in order to show action in conformity therewith,' " but allows its admission " 'as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.' " *People v Mack*, 493 Mich 1, 2-3; 825 NW2d 541 (2012).

As provided in MCL 768.27b, evidence of other acts of domestic violence are only admissible if not otherwise excluded under MRE 403. As described by this Court in *People v Cameron*, 291 Mich App 599, 610-611; 806 NW2d 371 (2011):

> The statutory language and policy considerations of MCL 768.27b clearly demonstrate the Michigan Legislature's intent to allow prior-bad-acts evidence to be introduced at trial as long as the evidence satisfies the "more probative than prejudicial" balancing test of MRE 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the

---

[1] In his statement of questions presented, defendant challenges the admission of St. Clair Sheriff's Deputy Joshua Goodrich's testimony regarding the victim's description of defendant's attack. Defendant's argument goes no further and we therefore deem it abandoned. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). He also contends that the admission of Officer Rumley's testimony violated MCL 768.27c. Again, he makes no argument to support this statement, and we need not address it further. *Id.*

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In assessing the trial court's admission of evidence, we "must make two distinct inquiries": first, we must consider whether introduction of the subject evidence "was unfairly prejudicial"; second, we must " 'weigh the probativeness or relevance of the evidence' against the unfair prejudice." *Id.* at 611.

In determining whether other acts evidence is unfairly prejudicial, courts should consider various factors, including:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012).]

Evidence regarding defendant's prior act of domestic violence against Wencley was not unfairly prejudicial. The 2015 domestic violence offense was remarkably similar to the charged offense. Both assaults occurred during arguments over parenting abilities. During both arguments, defendant became enraged and grabbed his partner by the neck. Defendant used sufficient force to transport his victims in both incidents; he pushed Wencley into another room and the victim in this case across the room and against her closet door. The assault underlying this case was shorter in duration as 14-year-old KD interrupted. The assault against Wencley lasted longer only because her one-year-old daughter was unable to intercede in this manner. This slight variance is insufficient to render the evidence unfairly prejudicial.

The evidence of defendant's assault against Wencley was also reliable. Wencley immediately reported the assault to the police. An officer responded to the home and observed red marks on Wencley's neck. The officer photographed her injuries. There is no evidence suggesting that Wencley lied.

Defendant implies that evidence of defendant's prior act of domestic violence was unnecessary as KD corroborated the victim's version of events and the case was therefore not a pure credibility contest. However, the corroborating testimony came from the victim's son, who was dependent on his mother for support, housing, and affection. The prosecutor may have deemed additional supporting evidence necessary to overcome any concern that the eyewitness was biased.

Given these considerations, defendant has not established that the prior bad acts evidence was unfairly prejudicial and therefore cannot demonstrate that the unfairly prejudicial effect of the evidence substantially outweighed its probative value. The evidence was admissible and defense counsel had no ground to object. "[C]ounsel is not ineffective for failing to make a futile motion." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017). In any event, defense counsel tried to spin this evidence to defendant's advantage. Counsel elicited testimony

that the victim sought out Wencley on Facebook about six weeks before her attack. Defense counsel attempted to establish some level of collaboration between Wencley and the current victim to undercut the current victim's credibility. "The fact that defense counsel's strategy was unsuccessful does not render him ineffective." *People v Solloway*, 316 Mich App 174, 190; 891 NW2d 255 (2016).

We affirm.


/s/ Thomas C. Cameron
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher